841 So.2d 911 (2003)
Sandra CHRISTIANA
v.
Dr. Stephen SUDDERTH and East Jefferson General Hospital Foundation d/b/a East Jefferson General Hospital.
No. 02-CA-1080.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 2003.
*912 Frank A. Silvestri, John Paul Massicot, Silvestri & Massicot, Peter D. Derbes, New Orleans, LA, for Plaintiff-Appellant, Sandra Christiana.
Thomas P. Anzelmo, Catherine M. Williams, McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Metairie, LA, for Defendant-Appellee, East Jefferson General Hospital.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
Plaintiff appeals the granting of a summary judgment that dismissed one of the defendants in this medical malpractice suit. We reverse and remand.
On September 11, 1997 Sandra Christiana underwent surgery for removal of a twisted section of bowel. The surgery was performed by Dr. Stephen Sudderth at East Jefferson General Hospital (hereafter "EJGH"). Dr. Sudderth removed the damaged section of bowel and joined the remaining ends by creation of a side-toside anastomosis (essentially, a bypass in the bowel). During this procedure Dr. Sudderth used two surgical staplers, a GIA stapler and a TA 55 stapler.[1]
In the days following the procedure, Christiana developed post-surgical complications. She returned to surgery on September 18, 1997, at which time Dr. Sudderth discovered there was leakage from the anastomosis along the GIA staple line. Because of the inflamed and infected condition of the bowel, Dr. Sudderth had to perform an ileostomy (placement of an external bag for the removal of waste matter). Ultimately, Christiana underwent three additional surgical procedures, which finally resulted in the repair of the ileostomy and removal of the bag in April 1998.
Christiana filed a medical malpractice complaint against Dr. Sudderth and EJGH. The medical review panel determined that as to Dr. Sudderth there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court: specifically, whether or not the stapler was defective or Dr. Sudderth used it improperly, based upon his deposition statements. However, the panel found no breach of the standard of care by EJGH.
Plaintiff subsequently filed suit against Dr. Sudderth and EJGH.[2] As to EJGH, *913 the plaintiff alleged that the hospital, through its employees, breached the applicable standards of care as follows:
A. By failing to properly load the GIA 80;
B. By removing the instructions for the GIA 80 which purportedly set forth the minimum tissue thickness on which the stapler could be used;
C. By such other negligent acts or omissions which may be proved at trial.
Both defendants filed motions for summary judgment. In its motion for summary judgment EJGH noted that plaintiff alleges there was a failure in the assembly of the stapler at the time of the surgery by one or more of the hospital employees that resulted in damage or misalignment of the staples as they were ejected from the cartridge. EJGH argued that the plaintiff cannot prove there was a breach of the standard of care by the hospital. In support of its position the hospital attached the opinion of the medical review panel, which was unanimous in finding that the evidence did not support the conclusion that the hospital failed to meet the applicable standard of care as charged in the complaint.
EJGH also attached the affidavit of the head of the EJGH surgery department, Judy Bauer, R.N., who has been a registered nurse for 20 years, has worked at EJGH for 16 years, and has been a Certified Operating Room Nurse for the past 10 years. Bauer stated that the duties of a surgical assistant during a surgical procedure similar to plaintiff's would include sterilely opening the packaging and handling it onto the sterile field, handing the stapler device to the surgeon, and reloading the stapler, as necessary.
According to Bauer, the GIA 80 stapler is a pre-packed, pre-loaded apparatus, which is not assembled by the surgical assistants but instead is a disposable, onepatient item that can be reloaded up to seven times and in the surgery in question was reloaded twice. Bauer stated that if the reloaded cartridge was not seated tightly or loaded properly, the apparatus would not fire and, further, the firing of the staple line and the advancement of the handle are under the control of the operator. Finally, Bauer said her review of the record disclosed no evidence that the stapler malfunctioned or that the surgery team loaded it incorrectly.
In its motion for summary judgment EJGH also pointed out that plaintiff has failed to identify an expert who will testify that the employees of EJGH deviated from the standard of care.
In opposition to the motion, the plaintiff contended that there is a significant factual dispute concerning what stapler and what size staples were provided to Dr. Sudderth during the procedure performed on the plaintiff on September 11, 1997. The plaintiff pointed out that, although Dr. Sudderth's second operative report refers to a GIA 80 being used during the first procedure, billing provided by EJGH shows that Sandra Christiana was charged for a GIA 60 stapler and two GIA 60 3.8 mm staple cartridges.
In addition, Nancy Scoggins, a surgican technician who assisted at the surgery, gave testimony that contradicted Dr. Sudderth's regarding the respective size and color of the respective staplers and staples, further clouding the issue of what size stapler and staples were provided to Dr. Sudderth.
Further, the plaintiff argued that discovery taken after the medical review panel rendered its decision had produced evidence *914 that raises a material issue of fact regarding the hospital's role in the stapler and staple size confusion. Dr. Sudderth testified he believed he used a GIA 80 with 4.8 mm staples, but hospital billing records show he was given either a GIA 60 or 80 and two reload 3.8 mm staple cartridges, not the 4.8 or larger staples he thought he was using and believed was appropriate for use on the bowel.
The plaintiff also pointed out that Judy Bauer could not say in her deposition whether the GIA 60 or GIA 80 stapler was provided to Dr. Sudderth and Bauer did not know that these staplers could use different size staples.
In addition, the plaintiff submitted the GIA 80 stapler instruction booklet, which states in pertinent part as follows:
READ ALL INSTRUCTIONS CAREFULLY.
Contraindications:
1. Do not use the MULTIFIRE GIA 80-4.8 instrument on any tissue that compresses to less than 2.0mm in thickness. Do not use the MULTIFIRE GIA 80-3.8 instrument on any tissue that compresses to less than 1.5mm in thickness. In such cases, the staples may not be tight enough to ensure hemostasis.
. . .
3. Do not use the MULTIFIRE GIA 80-4.85 instrument on any tissue that cannot comfortably compress to 2.0mm in thickness. Do not use the MULTIFIRE GIA 80-3.85 instrument on any tissue that cannot comfortably compress to 1.5mm in thickness. In such cases, the tissue is too thick for the staple size.
. . .
5. Tissue such as the duodenum or stomach may be too thick for the MULTIFIRE GIA 80 disposable loading units, and therefore tissue thickness should be carefully evaluated before firing. However, the MULTIFIRE GIA 80 disposable surgical stapler with the MULTIFIRE GIA 80 disposable loading unit can be used on the stomach for anastomosis.
6. This device is not intended for use except where indicated.
The court denied Dr. Sudderth's motion, but granted summary judgment in favor of EJGH. The plaintiff appeals the grant of summary judgment.
On appeal plaintiff contends the trial court erred in granting the motion for summary judgment because there are factual issues concerning whether EJGH personnel provided Dr. Sudderth with the appropriate stapler and the appropriate-sized staples for the procedure involved in this case.
Plaintiff asserts that the following material fact issues warranted denial of EJGH's motion:
1. What stapler and what size staples Dr. Sudderth requested of the EJGH personnel assisting him for the September 11, 1997 procedure on the plaintiff, raised by the conflict between the deposition testimony of Dr. Sudderth and of nurse Nancy Scoggins.
2. What stapler and what size staples actually were provided to Dr. Sudderth by EJGH personnel for that operation, illustrated by the conflict between deposition testimony of Judy Bauer and Nancy Scoggins, as well as by the patient's bills, one of which shows a charge for a GIA 60 stapler and another which shows a charge for a GIA 80 stapler, and which also show charges for 3.8 mm staples rather than the 4.8 mm staples Dr. Sudderth thought he was using.
*915 3. Whether EJGH personnel involved in the plaintiff's September 11, 1997 surgery knew or should have been familiar with the manufacturer's instructions, contraindications and cautions regarding the use of the GIA stapler, illustrated by the deposition testimony of nurse Scoggins and nurse Cindy Fitzsimons.
Plaintiff asserts that expert testimony is not required for resolution of these fact issues. She points to the medical review panel's finding that there were material fact issues bearing on liability which could not be resolved by expert opinion. Plaintiff argues that the medical review panel's absolution of EJGH of liability is moot because discovery she conducted subsequently resulted in production of the evidence indicating that Dr. Sudderth was given a different size stapler and staples than he requested.
Plaintiff contends the GIA stapler documentation, Dr. Sudderth's testimony, and the conflicting records of EJGH, along with the testimony of its personnel, raise additional factual issues on the liability of EJGH, so that the motion for summary judgment should have been denied.
In opposition, EJGH asserts the trial court properly granted the motion for summary judgment because the plaintiff produced no expert to testify that EJGH breached the standard of care in this case.
Plaintiffs in a medical malpractice suit against a hospital have the burden of showing that the hospital personnel negligently departed from the recognized standard of care afforded by hospitals in the area for the particular malady involved. Dean v. Ochsner Med. Found. Hosp. & Clinic, 99-466, p. 5 (La.App. 5 Cir. 11/10/99), 749 So.2d 36, 39.
An expert is not required when there is some obvious act from which a lay person can infer negligence, such as fracturing a leg during examination, amputating the wrong limb, dropping knife, scalpel or acid on a patient, or leaving a sponge in a patient's body. Pfiffner v. Correa, 94-0924, p. 9 (La.10/17/94), 643 So.2d 1228, 1233.
In Pfiffner, the court held further:
We hold that expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim. Though in most cases, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim under LSA-R.S. 9:2794's requirements without medical experts, there are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can, or in which the defendant/physician testifies as to the standard of care and there is objective evidence, including the testimony of the defendant/physician, which demonstrates a breach thereof. Even so, the plaintiff must also demonstrate by a preponderance of the evidence a causal nexus between the defendant's fault and the injury alleged.
94-0924, p. 9-10 (La.10/17/94), 643 So.2d 1228, 1234.
We conclude there are genuine issues of material fact in the following respects: whether hospital personnel gave Dr. Sudderth a different size stapler and/or staples than he requested; whether such was a negligent act that was a breach of the standard of care; and whether EJGH personnel knew or should have been familiar with the manufacturer's instructions, contraindications, and cautions regarding the use of the GIA stapler.
We are not persuaded by the affidavits of the three physicians who were members of the medical review panel, which EJGH *916 filed in support of its motion for summary judgment.[3] In those affidavits the doctors each state it was within the standard of care for Dr. Sudderth to use either a GIA 60 or a GIA 80 stapler and also either 3.8 or 4.8 size staplers in this procedure. Those affidavits were given after the medical review panel had concluded and were based on information that was not considered by the panel in its deliberations, because the information was developed afterwards.
Further, the affidavits do not address the manufacturer's instructions for the GIA 80 stapler, which state under "Contraindications" that the GIA 80 should not be used on tissue that is either too thick or too thin for the different available staple sizes. The affidavits appear to contradict the manufacturer's own contraindications. A health-care provider's deviation from a manufacturer's warning may be negligence for which expert testimony is not required to establish the applicable standard of care, because such evidence may be sufficient to make a prima facie showing of negligence. See Fournet v. Roule-Graham, 00-1653 (La.App. 5 Cir. 3/14/02), 783 So.2d 439, writ denied, 01-985 (La.6/15/02), 793 So.2d 1242; Terrebonne v. Floyd, 99-766 (La.App. 1 Cir. 5/23/00), 767 So.2d 758, writ not considered, 00-1931 (La.9/29/00), 769 So.2d 549.
For the foregoing reasons, the judgment granting summary judgment in favor of East Jefferson General Hospital is reversed and the matter is remanded. Costs of this appeal are assessed against the appellee, East Jefferson General Hospital.
REVERSED AND REMANDED.
NOTES
[1] Dr. Sudderth testified he believed he was using a GIA-80 with 4.8 mm staples.
[2] The plaintiff named the hospital incorrectly as "East Jefferson General Hospital Foundation d/b/a East Jefferson General Hospital." The hospital's correct legal name is "Jefferson Parish Hospital Service District No. 2, Parish of Jefferson, State of Louisiana d/b/a East Jefferson General Hospital," as pointed out by the hospital in its answer to the petition.

In addition, the plaintiff originally included United States Surgical Corporation, manufacturer of the surgical stapler, as a defendant under a products liability claim. Subsequently, however, the plaintiff amended her petition to eliminate United States Surgical Corporation as a defendant, deleting all references to the company in the petition.
[3] The physician members of the medical review panel were Julius Levy, Jr., M.D.; Frank DiVincenti, M.C.; and Rene deBoisblanc, M.D.